**Ramon DURAN, Petitioner,**

v.

**David MILLER, Superintendent, Eastern N.Y. Correctional Facility, Respondent.**

No. 03–CV–0399(ADS).

United States District Court, E.D. New York.

June 22, 2004.

**252**

Ramon Duran, Napanoch, NY, pro se.

Denis Dillon, Nassau County District Attorney, by Robert A. Schwartz, Assistant District Attorney, Mineola, NY, for Respondent.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Ramon Duran ("Duran" or "Petitioner"), appearing *pro se,* petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court denies Duran's petition in its entirety.

### BACKGROUND

On January 22, 1998, at approximately 10:25am, Ramona Duran ("Ramona"), who is no relation to Petitioner Ramon Duran, was feeding her baby in her apartment in Baldwin, New York, when she heard a knock on her door. Thinking that her husband was coming back, she opened the door and Ramon Duran and his four accomplices pushed their way into her apartment, demanding money from her at gunpoint. The assailants began to tie up Ramona with duct tape as she screamed for her baby and for help from her brother-in-law Anastacio Rodriguez ("Rodriguez").

Rodriguez came out of the rear bedroom dressed only in his underwear. His attackers forced him back into the bedroom, bound his hands with duct tape, and demanded money from him by pointing a gun to his head. When Duran and his accomplices returned to the main room and proceeded to pillage the apartment, Rodriguez managed to free himself from the duct tape and escaped the apartment from a rear exit. Rodriguez ran down the street in his underwear and screamed for help.

Upon noticing that Rodriguez was missing, Duran and his accomplices fled the apartment with approximately $900 in cash and several pieces of personal property.

From across the street, Kenneth Gasbarro ("Gasbarro") saw the intruders running from the apartment and he decided to follow them. He entered his car, dialed 911, and relayed to the police the license plate numbers of the two cars in which the perpetrators left. One of the licenses plates led police to Jose Gutierrez ("Gutierrez"), who was one of the intruders. Gutierrez confessed to the crimes and implicated Duran and the others.

After being identified by Gutierrez, Duran was approached by detectives who inquired about his name and informed him that he "had a problem ... a couple of weeks ago with Jose and his car." Resp't Br. to App. Div. at 6 (citing Hearing Tr. at 43, 243). Duran responded that he owned the car and that he had recently purchased the car from Gutierrez. Insisting that "it's my car, it's my car, I bought it" *Id.*, Duran showed detectives the car. Matching the car to the one used in the robbery, the police arrested Duran.

After being advised of and waiving his *Miranda* rights in Spanish, Duran confessed in Spanish to his role and that of his accomplices in entering Ramona's apartment by force and stealing Ramona and Rodriguez's belongings. Detective Robert DePietro, a native Portuguese speaker who also served as a Spanish/English Interpreter for the Nassau County Police Department, "reduced to writing [Duran's] admission, translating [Duran's] words, verbatim, from Spanish to English ... [and] then read the statement back to [Duran] in Spanish." *Id.* at 8. Detective DePietro also read to Duran the following written statement: "I have given this statement to Det. DePietro in Spanish and he has written for me in English, Det.

DePietro has read it back to me in Spanish and it is the truth." Pet'r Confession at 2. Duran signed his name after this statement and again at the end of the confession. Detective DePietro also signed the confession as a witness.

In addition, Detective DePietro showed victim Anastacio Rodriguez "an array of six photographs, including Petitioner's, depicting Hispanic men of similar age and appearance and asked Rodriguez if he recognized anyone." Resp't Mem. at 7. Rodriguez identified Duran as one of the intruders who pointed a gun at him and demanded money.

Duran was charged with Robbery in the First Degree, Robbery in the Second Degree, Burglary in the First Degree, Burglary in the Second Degree, and Criminal Possession of a Weapon in the First Degree in violation of New York Penal Law §§ 160.15[4], 160.10[1], 140.34[4], 140.25[2], and 265.09[2], respectively. He moved to suppress his confession as involuntary, the recovered "get away" car as illegally seized, and Rodriguez's identification of Duran as his assailant as unduly suggestive. After a pre-trial hearing, the court denied Duran's motion.

On October 13, 1998, following a jury trial in Nassau County Court (Kowtna, J.), Ramon Duran was convicted of all the counts in the indictment. On April 28, 1999, Duran was sentenced to three concurrent terms of incarceration of twelve to twenty-four years for his convictions for first degree robbery, burglary, and criminal possession of a weapon. He was also sentenced to serve concurrently seven and one half to fifteen years for each of his second degree robbery and burglary convictions.

Duran directly appealed his convictions, arguing that: "(1) [his] statement was obtained in violation of his constitutional

rights because although he was read his rights in Spanish, his statement was written in English, which he could not read; (2) the court erred in not permitting [him] to call Anastacio Rodriguez as a witness at the pre-trial hearing so that he could be questioned about his identification of [Duran] from a photo array; (3)[he] was denied the effective assistance of trial counsel because counsel failed to move to preclude, for lack of notice, an oral statement [Duran] made [about ownership of the getaway car] to the police prior to the arrest; (4) inflammatory remarks made by the prosecutor during his opening, summation, and cross-examination of a defense witness denied [Duran] a fair trial; (5)[his] guilt was not proven beyond a reasonable doubt and the verdict was against the weight of the evidence; and (6)[his] sentence was unduly harsh and should be reduced in the interest of justice." Resp't Aff. at 4.

On November 13, 2001, the Appellate Division, Second Department, affirmed Duran's convictions. *People v. Duran*, 288 A.D.2d 319, 734 N.Y.S.2d 451 (2d Dept. 2001). Specifically, the Appellate Division held that Duran's written confession in English was properly admitted into evidence at the trial. By a letter dated November 29, 2001, Duran sought leave to appeal to the New York Court of Appeals and he raised all six arguments from his direct appeal. On January 24, 2002, the New York Court of Appeals denied Duran leave to appeal his convictions. *People v. Duran*, 97 N.Y.2d 704, 739 N.Y.S.2d 104, 765 N.E.2d 307 (2002). Duran did not seek certiorari review before the United States Supreme Court or file any post-conviction motions.

On January 17, 2003, Duran filed the instant petition with this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing: (1) the court erred in

failing to suppress his confession and that his confession was involuntary because it was written in English and he could not verify its accuracy as he only read Spanish; (2) the court improperly denied his motion to call victim Anastacio Rodriguez to testify at the pretrial *Wade* hearing as to his identification of Petitioner; (3) he was denied the effective assistance of trial counsel because counsel did not make a pre-trial motion to preclude the People's use of his oral statements about owning the car identified to be the one used in the robbery and counsel did not effectively cross-examine the detective about these statements; and (4) the prosecutor engaged in misconduct by making inflammatory remarks and deprived Petitioner of his right to a fair trial. Because Duran's petition is timely under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") and all of Petitioner's claims have been exhausted in state court, the Court will address the merits of Duran's petition.

### DISCUSSION

Petitioner filed this action after the April 24, 1996, the effective date of AEDPA and therefore, its provisions apply to his case. *Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).

Under the provisions of 28 U.S.C. § 2254(d), a habeas corpus application must be denied unless the state court's adjudication of the claim on the merits either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in [a Supreme Court case], or confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from their precedent." *Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001) (citing *Williams*, 529 U.S. at 405–406, 120 S.Ct. 1495). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Penry*, 532 U.S. at 792, 121 S.Ct. 1910 (citing *Williams*, 529 U.S. at 407–408, 120 S.Ct. 1495).

## I. As to Whether Petitioner's Confession Was Involuntary

Petitioner claims that the state court erred in failing to suppress his confession and that his confession was "involuntary" under the standards set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, Petitioner's case differs from traditional *Miranda* cases because Petitioner does not attack his decision to speak to the police or his waiver of his *Miranda* rights. *See* Pet. at 8; Pet'r Mem. at 16–17.

Rather, Petitioner challenges the accuracy of Detective Robert DePietro's translation of his confession from Spanish to English and Detective DePietro's ability to translate because he was a native Portuguese speaker and was serving a "dual role as inquisitor and interpreter." Pet'r Mem. at 18. Petitioner claims that the confession "can not be deemed voluntary" because he could not speak English and could not personally read the confession to verify the accuracy of his statements. Pet. at 8. As to the alleged inaccuracies, Petitioner notes two errors: Detective DePietro initialed a corrected misspelling of the word "Hispanic" and the date of the crime was noted as January 1997, not 1998.

The "ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); *see also Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997). In the context of federal habeas review, a state court's determination of factual matters, "such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings," is entitled to a presumption of correctness under 28 U.S.C. § 2254(d), provided that such matters are fairly supported in the record. *Miller*, 474 U.S. at 117, 106 S.Ct. 445.

The "admission of a voluntary, translated confession, in the proper factual circumstances ... is neither contrary to nor an unreasonable application of Supreme Court law." *Ventura v. Artuz*, No. 99 Civ. 12025(AJP), 2000 WL 995497 at *7 (S.D.N.Y. July 19, 2000). In *Ventura*, the court found that that detective was able to speak both Spanish and English and "literally translated [the petitioner's] sentences in English as [the petitioner] spoke." *Id.* at *7. The petitioner "signed the English version of his translated statement after listening to it read in Spanish and declining to make any changes." *Id.* The *Ventura* court denied the habeas petition and held that the state court's admission of the translated confession was not an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at *7 (quoting 28 U.S.C. § 2254(d)(2)).

The facts in this case are similar to those in *Ventura*. Detective DePietro was also able to speak both English and Spanish. In fact, Detective DePietro attended a course for Spanish interpretation and was an official Spanish/English Interpreter for the Nassau County Police Department. Detective DePietro translated Petitioner's confession "in a contemporaneous fashion" into English by writing Petitioner's "words, verbatim, from Spanish to English." Resp. Br. to App. Div. at 8. He then read the statement back to the Petitioner in Spanish and gave him "an opportunity to indicate any lack of understanding or indicate any disagreement with the statement" prior to Petitioner signing the confession.

The Petitioner declined to make any changes to his statement and he did not contest the accuracy of Detective DePietro's translation at the time of his confession. He signed the confession and made the following statement: "I have given this statement to Det. DePietro in Spanish and he has written for me in English, Det. DePietro has read it back to me in Spanish and it is the truth." Pet'r Confession at 2. As to the misspelled word "Hispanic," the Court notes that Detective DePietro and the Petitioner both initialed next to the correct spelling. The Court also believes that the date of January 1997, instead of 1998, was an unintentional mistake and does not detract from the accuracy of the Petitioner's other statements in the confession. The Petitioner presents no other evidence that the translation was otherwise inaccurate or "subject to serious errors and mistakes."

In addition, the Petitioner cannot claim, in hindsight, that Detective DePietro was unable to translate his confession because he was a native Portuguese speaker. The Petitioner had a full and fair opportunity to litigate this claim in state court and

challenge Detective DePietro's ability to translate his confession. This Court must attach a presumption of correctness to the state court's factual findings that Detective DePietro's translation was accurate. Also, the Petitioner's contention that he had a constitutional right to have the "opportunity to write his own statement in Spanish," Pet'r Mem. at 30, is without merit.

Moreover, the Petitioner acknowledges that he waived his *Miranda* rights. He contests only the accuracy of his translated confession, not whether his statement was voluntarily given in Spanish to Detective DePietro. *See People v. Duran*, 288 A.D.2d 319, 734 N.Y.S.2d 451 (2d Dept. 2001) (holding that "the fact that the statement was translated from Spanish into English by a detective affects only the weight to be given to the statement by the jury, and is not relevant to the County Court's determination that the statement was voluntarily given") (citations omitted); *People v. Montero*, 273 A.D.2d 128, 709 N.Y.S.2d 552 (1st Dept.2000) (finding that "the fact that defendant understood no English did not render the confession inadmissible, since the detective translated the statement verbatim, into Spanish for defendant before defendant adopted it as his own statement by signing it ... [and] the accuracy of the detective's recording and translation of the statement were factual issues for the jury"). The Court also notes that defense counsel argued in his summation that the transcript was not accurate, stating: "would you sign a contract that you couldn't read?" Trial Transcript ("Tr.") at 478. Counsel also emphasized that it was "the police department's responsibility to take an accurate statement." Tr. at 486.

Therefore, this Court finds that Petitioner voluntarily gave his confession and the state court's denial of his motion to suppress his statement was not an "unreason-

able application" of clearly established federal law. Accordingly, the Court denies the Petitioner's claim that the state court erred in failing to suppress his confession.

## II. As to Petitioner's Motion to Call the Complainant as a Witness at the Wade Hearing

The Petitioner claims that he was "denied the right to challenge the constitutionality of the identification procedure for any hints' subterfuges, or undue suggestiveness" when the trial court denied his *Chipp* application to call victim Anastacio Rodriguez to testify at the pre-trial suppression hearing. The Petitioner asserts that Rodriguez's testimony was necessary because "Detective DePietro conducted the photo pack procedure only with the victim Anastacio Rodriguez, never call[ed] the other victim Ramona Duran, and the procedure was conducted without the presence of any other police personnel." Pet'r Mem. at 20.

■ In *People v. Chipp*, 75 N.Y.2d 327, 337, 553 N.Y.S.2d 72, 552 N.E.2d 608, *cert. denied*, 498 U.S. 833, 111 S.Ct. 99, 112 L.Ed.2d 70 (1990) the New York Court of Appeals held that a defendant does not have "an absolute right to compulsory process" at a *Wade* hearing. Citing policy concerns, the Court noted that affording such a right "would enable defendants to harass identifying witnesses and to transform the hearing into a discovery proceeding neither authorized nor contemplated by the Legislature." *Id.* at 337, 553 N.Y.S.2d 72, 552 N.E.2d 608. Therefore, "absent some indication that the pre-trial identification procedure employed was suggestive, a hearing judge may properly preclude a defendant from demanding the appearance and testimony of a witness at the *Wade* hearing." *Rivalta v. Artuz*, No. 96 Civ. 8043(SAS), 1997 WL 401819 at *3 (S.D.N.Y. July 16, 1997).

■ As such, the state court's denial of the Petitioner's *Chipp* application did not deprive him of a federal constitutional right or address a matter of clearly established federal law as required for habeas review. *See Mitchell v. Fischer*, No. 02–CV–6336 (JBW), 2003 WL 22952851 at *6 (E.D.N.Y. Oct.20, 2003) (holding that a defendant does not have an absolute right to have a complainant produced at a *Wade* hearing); *Heron v. People of the State of New York*, No. 98 Civ. 7941(SAS), 1999 WL 1125059 at *10 (S.D.N.Y. Dec.8, 1999) (finding that "under New York law, it is well-settled that there is no absolute rule which requires the identifying witness to appear at a *Wade* hearing when the suggestiveness of the identification procedure is called into question"). "Generally, the discretionary exclusion of an identifying witness by a trial judge at a pre-trial hearing does not rise to the level of constitutional error." *Sorenson v. Superintendent*, No. 97 Civ. 3498(NG), 1998 WL 474149 at *4 (E.D.N.Y. Aug.7, 1998).

Moreover, this Court believes that the state court properly acted within its discretion in denying the Petitioner's motion and concluding that the identification procedure was not unduly suggestive. The Court held that "the photographic displays ... were similarly composed of photographs of persons substantially similar in age, having fairly comparable features and physical characteristics so as to ensure fairness and reliability during the course of the viewing process." Tr. at 306–307. Also, asking only one of the two victims for an identification and having no other police personnel supervise the procedure does not render the identification "so suggestive as to raise 'a very substantial likelihood of irreparable misidentification.'" *Mitchell*, 2003 WL 22952851 at *5 (citing *Jackson v. Fogg*, 589 F.2d 108, 111 (2d Cir.1978)). In addition, both Anastacio Rodriguez, the

identifying witness, and Ramona Duran, the other victim, testified at the trial and the Petitioner's counsel had ample opportunity to cross examine them.

Accordingly, the Court denies this claim in that there is a failure to raise a federal constitutional issue. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (federal habeas corpus relief does not lie for mere errors of state law).

### III. As to the Ineffective Assistance of Counsel Claim

■ Petitioner argues that he was denied his right to the effective assistance of counsel when trial counsel did not make a pre-trial motion to preclude his oral statements about owning the car which was identified as the car used in the robbery. He claims that, at the pre-trial hearing, counsel should have raised the People's failure to notify him of its intent to use his oral statements, pursuant to New York Criminal Procedure Law § 710.30. At the trial, counsel did object to the introduction of these statements during the testimony of Detective Carl Re. However, the trial court held that the Petitioner had forfeited this claim by not raising it at the pre-trial hearing.

The Respondent concedes that the People did not properly notify Petitioner of its intent to use these statements under Section 710.30. Nevertheless, the Respondent argues that counsel was not deficient because he appropriately objected at the trial. Rather, the Respondent claims that the trial court erred in denying counsel's motion and admitting Duran's oral statements.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel performed deficiently and that the deficiency caused actual prejudice to his or her defense. *Strickland v. Washington,*

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner may prove the deficiency prong by establishing that defense counsel's conduct fell "outside the wide range of professionally competent assistance," *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052, and may establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir.2002) (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court specifically noted that federal district courts need not address both components if a petitioner fails to establish either one. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. In particular, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697, 104 S.Ct. 2052.

This Court does not need to reach the issue of whether counsel was deficient because Petitioner failed to prove that counsel's actions actually prejudiced him. Petitioner's ownership of the car was otherwise established by testimony that he led police to his car and showed them his car keys. Petitioner also admitted that he owned the "get away" car in his written statement to the police. In addition, there was overwhelming evidence of Petitioner's guilt, including Petitioner's written confession, Rodriguez's identification of him as his attacker, and Gasbarro's testimony that he saw Petitioner fleeing from the apartment after the robbery. In light of this other testimony, the Court does not believe that the admission

of these oral statements caused the Petitioner actual prejudice. Accordingly, the Court denies this ineffective assistance of counsel claim.

### IV. As to the Prosecutorial Misconduct Claim

Petitioner claims that the prosecutor's inflammatory remarks deprived him of his right to a fair trial. Specifically, the Petitioner refers to the following comments: (1) the prosecutor's opening remark that "the victims [had] the American dream and [Duran had] a twisted version of the American dream;" (2) the prosecutor's description of the victim running down the street in his underwear on a "nice and warm" day in January; and (3) the prosecutor's alleged ridicule of the tee-shirt that the Petitioner's girlfriend wore during her testimony. Further, he asserts that the prosecutor "unfairly vouched for the police officers" and "permeated [his comments] with sarcasm and derogatory undertone" and the trial court continuously had to reprimand the prosecutor for being argumentative.

■ In reviewing a claim of prosecutorial misconduct with regard to a writ of habeas corpus, the appropriate standard of review is "a narrow one of due process, and not the broad exercise of supervisory power." *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990) (citing *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)). The alleged prosecutorial misconduct must have caused the defendant "substantial prejudice" so that it infected the entire trial with fundamental unfairness and the resulting conviction was a denial of due process. *United States v. Shareef,* 190 F.3d 71, 78 (2d Cir.1999). A prosecutor's remarks do not become a denial of due process "unless they constitute 'egregious misconduct.'" *Id.* (citing *Don-*

*nelly v. DeChristoforo,* 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

■ In order to assess the impact of the prosecutor's comments, the reviewing court must consider the totality of the circumstances. *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (noting that the court must also review the defense counsel's summation to see if the defendant "invited" such a response); *Fero v. Kerby,* 39 F.3d 1462, 1474 (10th Cir.1994) (noting that the court should "look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly 'could have tipped the scales in favor of the prosecution'") (internal quotations omitted). Generally, inappropriate prosecutorial comments, standing alone, are insufficient to reverse a conviction. *Young,* 470 U.S. at 11, 105 S.Ct. 1038.

■ This Court does not need to reach the issue of whether the prosecutor demonstrated egregious conduct because the Petitioner failed to establish that he suffered substantial prejudice as a result of the prosecutor's comments. Assuming *arguendo* that the prosecutor's remarks were inappropriate, there was overwhelming evidence of Petitioner's guilt so that such comments would not "have tipped the scales in favor of the prosecution." *Fero,* 39 F.3d at 1474. The Petitioner gave a written statement confessing to committing these crimes; he admitted owning the "get away" car used in the robbery; Kenneth Gasbarro saw Petitioner fleeing from the robbery in the subject car; and the victims identified Petitioner as their assailant. Moreover, the Court notes that the trial court admonished the prosecutor in front of the jury when he stated that the Petitioner had a "twisted American dream" and the trial court instructed the jury to disregard that comment. Tr. at 137.

260

As to his supporting the testimony of the police officers, the prosecutor's comments were an appropriate response to the defense counsel's remarks that Detective DePietro's conduct in translating Petitioner's confession "was duplicitious, it's misdirected, it was dangerous and it was unconstitutional. When the interrogator becomes your interpreter, there is little hope for justice." Tr. at 489.

Accordingly, the Petitioner failed to prove that the prosecutor's comments were so prejudicial as to infect his entire trial with fundamental unfairness. Accordingly, this claim of prosecutorial misconduct is also denied.

### CONCLUSION

For the reasons stated above, Duran's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied in its entirety. Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied, as Petitioner has not made a substantial showing of a denial of a constitutional right. *Miller–El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**