**UNITED STATES of America, Appellee,**

v.

**Toby ROMANO, Defendant–Appellant.**

**No. 1090, Docket 88–1548.**

United States Court of Appeals,
Second Circuit.

Argued May 3, 1989.

Decided July 12, 1989.

Mark M. Baker, New York City (Slotnick & Baker, Barry Ivan Slotnick, of counsel, Lori Mann, Law Student, Brooklyn Law School, on the brief), for defendant-appellant.

George B. Daniels, Brooklyn, N.Y., Asst. U.S. Atty. E.D.N.Y. (Andrew J. Maloney, U.S. Atty. E.D.N.Y., John Gleeson, Asst. U.S. Atty., of counsel), for appellee.

Before FEINBERG and NEWMAN, Circuit Judges and STEWART, District Judge.[*]

FEINBERG, Circuit Judge:

Toby Romano appeals from a judgment of conviction on one count of bribing a public official in violation of 18 U.S.C. § 201(b)(1)(A), and two counts of giving or promising a gratuity to a public official in violation of 18 U.S.C. § 201(c)(1)(A). He was tried before a jury and Judge Eugene H. Nickerson in the United States District Court for the Eastern District of New York, and sentenced to serve one year and one day and fined $25,000 for the bribery conviction, and placed on probation for three years on each of the gratuity convictions, to run consecutively to the jail term and concurrently with each other. A mandatory $50.00 special assessment was imposed on each count.

## Background

This case arises out of an investigation into corruption in the construction and demolition industry undertaken by the United States Environmental Protection Agency (the EPA). Howard Stecker, an engineer technician for the EPA whose primary duty was to inspect for compliance with asbestos regulations, began to accept illegal payments from contractors in October 1982. After he was arrested in September 1986, he agreed to plead guilty to one count of filing a false instrument, and agreed to cooperate with the government. That cooperation consisted of Stecker's remaining in his job and acting in an undercover capacity in order to investigate contractors who had given him bribes. Over the course of the next year, Stecker made hundreds of tape recordings of conversations that he had with contractors, including defendant. In September 1987, Stecker tendered his resignation, and was taken off the government payroll.

Defendant Romano, who was in the interior demolition business at the time, first met Stecker in October 1983. Romano was doing work at a school, for which he had failed to file asbestos removal notices with the EPA. Stecker went to Romano's job site after hearing that work there was being done in violation of EPA regulations. When Stecker informed Romano that he was in violation, Romano asked, "What can we do about it," to which Stecker replied, "for ten thousand dollars I'd forget about it." Soon afterwards, Romano gave Stecker $6,000 in cash.

Two years later, in October 1985, Romano called Stecker and requested a meeting,

---

[*] Honorable Charles E. Stewart, Jr., Senior United States District Judge for the Southern District of New York, sitting by designation.

at which Romano explained that he was doing a demolition job and wanted Stecker to insure that he would not be cited for any EPA violations. Stecker agreed to protect Romano for $5,000, and although Stecker went to Romano's job site and attempted to contact Romano numerous times, the money was not paid. The two did not meet again until after Stecker began cooperating with the government.

After Stecker's arrest, whenever he met with Romano, Stecker wore a recording device. In December 1986, Stecker arrived at Romano's Manhattan job site in his government vehicle, and the two men went to a luncheonette, where they discussed the $5,000 that Romano had failed to pay to Stecker in October 1985. Romano said that he was having trouble getting his money from the company for which he had done that job and asked Stecker to put pressure on the company by requesting paperwork that Romano had. Romano would turn over the paperwork to the company after he had been paid. Stecker agreed, and the two made arrangements for payment of the $5,000 in two installments. The following week, Stecker and Romano met again, and Romano gave Stecker $1,500 in cash, which Stecker counted on the table in a diner so that the surveilling agents could see it. The two men never met again, although Stecker tried to contact Romano numerous times.

In February 1988, Romano was indicted on six counts for crimes based upon the three transactions with Stecker in 1983, 1985 and 1986. With regard to each transaction, the indictment charged both bribery and the corresponding lesser-included gratuity offense. Thus, Romano was indicted for corruptly giving an EPA agent a bribe in October 1983 (count one), for corruptly offering an EPA agent a bribe in October 1985 (count two), for corruptly giving an EPA agent a bribe in December 1986 (count three), for giving an EPA agent an illegal gratuity in October 1983 (count four), for offering an EPA agent an illegal gratuity in October 1985 (count five), and for giving an EPA agent an illegal gratuity in December 1986 (count six).

At trial, Romano's defense was that he was coerced into the actions charged in counts one and two out of fear of economic harm, and therefore he lacked the requisite intent for bribery. On counts three and six, Romano's defense was that he was entrapped by Stecker, who was acting by then as a government agent. On the bribery counts, the jury returned a verdict of not guilty on counts one and two, and guilty on count three. On the gratuity counts, which did not require corrupt intent, the jury returned a verdict of guilty on counts four and five. Because count six was a lesser-included offense of count three, the jury did not reach count six. Thus, the jury convicted Romano only on the gratuity counts on the pre–1986 charges when Stecker was not yet operating as a government agent, and on the more serious bribery count on the later charges. Prior to sentence, defendant moved for a judgment of acquittal on count three, pursuant to Fed.R.Crim.P. 29(c), on the ground that Stecker was not a public official for purposes of the bribery statute. Judge Nickerson denied the motion. This appeal followed.

### Discussion

Appellant argues that his conviction on the bribery count should be reversed because Stecker was not a "public official" within the meaning of 18 U.S.C. § 201(a), and therefore, the federal court lacked subject matter jurisdiction over the offense. He also contends that the district court erred in refusing to instruct the jury that if it acquitted on counts one and two because Romano was coerced, then it could not consider the underlying payments as evidence of defendant's predisposition in considering the entrapment defense on count three. Because both of these arguments are without merit, we affirm the judgment of conviction.

### A. Was Stecker a "Public Official"?

■ Under 18 U.S.C. § 201(a), the definitional section of the statute, a "public official" is a:

Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer *or employee* or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror; (emphasis added).

Appellant contends that this definition does not include Stecker after he was "turned" into a government agent because, at that time, Stecker had been terminated from his official functions at the EPA. To be within the statutory definition, appellant claims, a federal employee must occupy a position of trust with federal responsibilities; acting as an undercover agent in an investigation is insufficient. Appellant contends that Stecker was merely a "civilian, masquerading in 'public official's' clothing."

At the time that Romano performed the acts for which he was convicted in count three, Stecker was a federal employee. He was on the federal payroll, and, though his normal duties had been curtailed, he was performing an important service for the EPA by participating in the investigation. The fact that he had agreed to plead guilty to a crime does not change the fact that he remained a federal employee until 1987. We believe that Stecker's status as an employee is sufficient to make him a "public official" under the statute. Although this circuit has not been squarely faced with this precise question before, we believe that the interpretation of the statute adopted by other circuits is sound. The Ninth Circuit has said, "[s]ection 201(a) defines 'public official' to include any government employee." *United States v. Kidd*, 734 F.2d 409, 411–12 (9th Cir.1984). Similarly, in *Hurley v. United States*, 192 F.2d 297, 299 (4th Cir.1951), the Fourth Circuit said:

The phrases "officer or employee" and "person acting for or on behalf of the United States ... in any official function" must be read in the disjunctive.... The phrase "in any official function,"

therefore, modifies only the word "person" and not "officer or employee."

The *Hurley* court's conclusion is required because any other reading would make "the words 'officer' and 'employee' ... superfluous." *United States v. Gjieli*, 717 F.2d 968, 972 (6th Cir.1983), cert. denied, 465 U.S. 1101, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). The legislative history of the statutory provision also supports this view. The Senate Report stated, "[t]he term 'public official' is broadly defined to include officers and employees of the three branches of government, jurors, and other persons carrying on activities for or on behalf of the Government." S. Rep. No. 2213, 87th Cong., 2d Sess. (1962), reprinted in 1962 U.S.Code Cong. & Admin.News 3852, 3856.

Appellant cites a number of cases to us in which a defendant was held not to be a "public official" for purposes of § 201(a), but they are all readily distinguishable. For example, in *United States v. Del Toro*, 513 F.2d 656 (2d Cir.), cert. denied, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975), the official was employed by a city agency and the funds at issue in the case—although substantially generated by a federal agency—were administered and controlled by the city, not the federal government. The conduct was also clearly illegal under state law, and the question in that case was whether it was appropriate to charge the defendants with a federal crime, rather than leave the matter to the state. *Id.* 513 F.2d at 662. The panel in *Del Toro* indicated that the cases cited there by the government were inapposite because they all dealt with federal appointees and investigations under federal statutes, *id.* —exactly the situation that we have here. Certainly, corruption in the EPA is a matter primarily of federal, not state, concern. In discussing *Del Toro* in a later related case, this court said: "The convictions were reversed by this court [in *Del Toro* ] on the ground that the person bribed ... was an employee of New York City, rather than of the federal government, and was not, therefore, a federal official as required under § 201." *United States v. Loschiavo*, 531 F.2d 659, 661 (2d Cir.1976).

Similarly, appellant argues that the Supreme Court's recent decision in *Dixson v. United States*, 465 U.S. 482, 104 S.Ct. 1172, 79 L.Ed.2d 458 (1984), shows that Stecker's "mere employment relationship" was not enough to make him a "public official." However, in that case the Court determined whether a local official, who was *not* a federal employee, was performing sufficient activities on behalf of the federal government to fall under the jurisdictional scope of the statute. In *Dixson*, the Court held that the director of a private organization administering federal funds that had been granted to the city of Peoria was a "public official" under the bribery statute. *Id.* at 501, 104 S.Ct. at 1182. The Court stressed that the bribery statute was drafted with broad jurisdictional language, *id.* at 491–92, 104 S.Ct. at 1177, to reach all people performing activities for the federal government, regardless of the form of federal authority. *Id.* at 496, 104 S.Ct. at 1179–80.

We have held that it is legitimate for government agents to act as though they are corrupt, even when they are not, for purposes of prosecuting people under the bribery statute. See *United States v. Rosner*, 485 F.2d 1213, 1223 (2d Cir.1973), cert. denied, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974). It is irrelevant that Stecker was unable to achieve the objective of Romano's bribe after Stecker began cooperating with the government. See *United States v. Louie Gim Hall*, 245 F.2d 338, 339 (2d Cir.1957). Regardless of Stecker's exact duties, he remained a "public official" under § 201(a).

B. The Entrapment Charge

■ Appellant argues that the district court erred in refusing to give his suggested charge on entrapment. Because Romano's defense on the first two bribery counts (one and two) was coercion, he proposed that the judge charge as follows:

In considering whether or not Mr. Romano was the victim of entrapment as to counts three and six, you must, as I have just instructed you, determine whether or not Mr. Romano had a prior disposition to violate the law. In this regard, if

you believe that Mr. Romano was coerced into making the payments alleged in counts one, two, four and five by reasonable fear of economic loss, you may not consider those payments as evidence of any predisposition to violate the law in your determination of counts three and six.

Appellant claims that the judge should have given this charge because, to the extent that the trial court can, it must prevent inconsistent verdicts. He claims that the jury must have adopted his coercion defense, because it acquitted him on counts one and two.

■ The effect of appellant's proposed charge would have been to collaterally estop the jury from considering the same evidence on different counts in one prosecution. The law is clear that a defendant may not attack his conviction on one count because it is inconsistent with an acquittal on another count. *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (reaffirming *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932)). Res judicata concepts are not applicable to inconsistent verdicts; the jury is free to exercise its historic power of lenity if it believes that a conviction on one count would provide sufficient punishment. See *United States v. Carbone*, 378 F.2d 420, 422–23 (2d Cir.), cert. denied, 389 U.S. 914, 88 S.Ct. 242, 19 L.Ed.2d 262 (1967). As the Supreme Court noted in *Powell*, review for sufficiency of the evidence is a sufficient safeguard against jury irrationality, 469 U.S. at 67, 105 S.Ct. at 477–78, and appellant does not contend that there was insufficient evidence to convict him on count three. Cases cited by appellant are inapposite because they deal with the effect of acquittals on the later retrial of other counts. See, e.g., *United States v. Citron*, 853 F.2d 1055 (2d Cir.1988); *United States v. Mespoulede*, 597 F.2d 329 (2d Cir.1979).

For the reasons set forth above, defendant's suggested jury charge was not a correct statement of the law. Judge Nickerson's instruction on entrapment was cor-

1061

rect, and there is no reason to reverse the judgment.

Affirmed.