**David WOOD, Petitioner,**

v.

**Christopher ARTUZ, Superintendent, Green Haven Correctional Facility, Respondent.**

**No. CV 97–1792.**

United States District Court, E.D. New York.

Feb. 2, 1999.

David Wood, Green Haven Correctional Facility, Stormville, New York, petitioner pro se.

Denis Dillon, Nassau County District Attorney, by Daniel T. Butler, Assistant District Attorney, Mineola, New York, for respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Presently before the Court is the habeas petition of David Wood pursuant to 28 U.S.C. § 2254. For the reasons that follow, the petition is denied.

## BACKGROUND

On September 10, 1983, in Baldwin, New York, petitioner killed Debra Drysdale and Douglas McMullen by shooting each three times at close range with a .357 Magnum handgun. Subsequently, petitioner turned himself in to the police and admitted committing these crimes.

On September 15, 1983, petitioner was charged by Nassau County Indictment 57484 with two counts of intentional murder in the second degree and two counts of criminal possession of a weapon in the second degree, pursuant to New York Penal Law § 125.25[1] and New York Penal Law § 265.03 respectively. Following a jury trial, petitioner was convicted of all of the counts in the indictment. On June 12, 1984, he was sentenced to consecutive indeterminate prison terms of twenty years to life on each of the murder convictions and concurrent indeterminate terms of imprisonment of five to fifteen years on each conviction of criminal possession of a weapon in the second degree.

Petitioner appealed from his conviction to the New York State Supreme Court, Appellate Division, Second Department (hereinafter "Appellate Division"), raising three grounds. Petitioner claimed that he was denied a fair trial because, on the day the trial was to begin, the court denied him a two-week continuance so that he could have a particular psychiatrist, Dr. Wroth, testify on his behalf. Defendant further claimed that he was denied due process and was convicted in violation of the Double Jeopardy Clause when the trial judge sent the jury back to continue deliberations because the form of the verdict was not in accordance with the court's instructions. Finally, petitioner argued that his sentence was excessive. In an order and decision dated April 6, 1987, the Appellate Division modified petitioner's sentence, by ordering that the sentence imposed on the murder convictions run concurrently with

each other instead of consecutively, and otherwise unanimously affirmed petitioner's conviction. *People v. Wood,* 129 A.D.2d 598, 514 N.Y.S.2d 93 (2d Dept. 1987).

By letter dated June 9, 1987, petitioner applied to the New York Court of Appeals for permission to appeal from the Appellate Division's decision affirming his judgment of conviction. In that application, petitioner raised only the first claim that he raised in the Appellate Division—that he was denied a fair trial because the court refused to grant a two-week continuance to secure the presence of Dr. Wroth, who petitioner sought to call as a witness. Petitioner did not argue in his application to the Court of Appeals, as he did in the Appellate Division, that having the jury sent back to correct its verdict denied him a fair trial and violated the Double Jeopardy Clause. In an order dated August 19, 1987, Judge Richard D. Simons denied petitioner's application for permission to appeal to the Court of Appeals. *People v. Wood,* 70 N.Y.2d 719, 519 N.Y.S.2d 1055, 513 N.E.2d 1323 (N.Y.1987).

On December 23, 1997, following respondent's motion to dismiss the instant petition as untimely, this Court issued a memorandum and order dismissing the petition as time barred. In light of *Ross v. Artuz,* 150 F.3d 97 (2d Cir.1998), the United States Court of Appeals for the Second Circuit vacated this Court's decision and remanded the case for further proceedings. *Wood v. Artuz,* No. 98–2124 (2d Cir. Sept. 25, 1998).

### DISCUSSION

In his present application, petitioner raises two claims. First, he contends that the trial court's denial of the continuance denied him a fair trial and due process. Second, he contends that the court's decision to send the jury back to correct the form of the verdict violated his right to due process and his right not to be twice placed in jeopardy for the same offense.

### I. PETITIONER'S CONSTITUTIONAL RIGHT TO DUE PROCESS WAS NOT VIOLATED WHEN, ON THE DAY THE TRIAL WAS SET TO BEGIN, THE COURT DENIED PETITIONER'S REQUEST FOR A TWO-WEEK CONTINUANCE

As a general rule, a motion for adjournment at the start of trial is addressed to the sound discretion of the trial judge. To show abuse of that discretion, the defendant must demonstrate both that the court's denial of a continuance was arbitrary and that the denial substantially impaired his defense. *See United States v. Edwards,* 101 F.3d 17, 18 (2d Cir.1996); *United States v. King,* 762 F.2d 232, 235 (2d Cir.1985).

Although a defendant has a fundamental constitutional right to present witnesses in his defense, *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), nevertheless the question of whether to grant a continuance in order to facilitate the calling of a particular witness falls under the general rule. *King,* 762 F.2d at 235. Applying the general rule stated above in the context of a denial of a continuance to secure a witness, courts have looked to four factors: (1) whether due diligence was exercised to obtain the witness; (2) whether substantial favorable evidence would be offered by the witness; (3) whether the witness is available and willing to testify; and (4) whether the denial of the continuance would materially prejudice the defendant. *See United States v. Rodriguez,* 15 F.3d 408, 411 (5th Cir.1994); *United States v. O'Neill,* 767 F.2d 780, 784 (11th Cir.1985); *United States v. Walker,* 621 F.2d 163, 168 (5th Cir.1980).

As to diligence, petitioner's application for the continuance demonstrates that no serious effort was ever made to obtain Dr. Wroth's testimony at trial. Petitioner's trial commenced May 7, 1984. Up until May 2, 1984, petitioner insisted that he did not want any of his treating psychiatrists

(of whom Dr. Wroth was one) to testify. As his defense counsel told the trial court "[Petitioner] felt it was not necessary. He felt that he would rather not have me do that." Even on May 2, five days before trial, petitioner was only considering counsel's recommendation that Dr. Wroth be contacted: "On May 2nd [petitioner] indicated that perhaps we should call ... Wroth." It was not until the morning of jury selection immediately before trial, after petitioner learned that Dr. Wroth was then unavailable, that he "manifested a strong desire to have Dr. Wroth testify."

Apart from the one call to Dr. Wroth's office on May 2, 1984, from which it was learned via the message on Wroth's answering machine that Wroth would not be in the office for two weeks, nothing suggests that petitioner tried to secure Wroth's testimony. Despite the trail court's offer of a "couple of days' continuance" during the course of the trial and despite the fact that the trial lasted until May 15, 1984 (nearly two weeks after counsel's May 2nd call to Dr. Wroth's office), it appears that no further effort was made to contact Wroth or compel his testimony. Petitioner's failure to take advantage of the court's offer or to make further efforts to contact Wroth demonstrate a lack of diligence in obtaining Wroth's attendance.

Petitioner further fails to satisfy any of the remaining criteria necessary to establish a due process violation—that Wroth would have tendered substantial favorable evidence, that he would have been willing and available to testify even after he returned to work, and that the denial of the continuance prejudiced petitioner. Because Wroth did not speak with defense counsel, the content of his testimony is unknown as is his availability to testify. Nor was petitioner materially prejudiced by the denial of his request for a two-week

continuance. Had petitioner taken advantage of the court's offer of a short continuance, the trial would have extended beyond Wroth's expected date of return to work. Assuming Wroth was then willing and available to testify favorably, petitioner could have called him as a witness. In any event, petitioner had already lined up another psychiatrist, a Dr. Feldman, to testify regarding his affirmative defense of extreme emotional disturbance and could have called to testify two other psychiatrists who had treated him prior to the charged offenses. In short, the court's refusal to grant petitioner a two-week continuance on the day the trial was set to begin was not arbitrary and did not impair petitioner's ability to present his defense.

II. *PETITIONER'S CLAIM THAT HE WAS TWICE PLACED IN JEOPARDY AND DENIED A FAIR TRIAL WHEN THE JURY WAS SENT BACK TO CORRECT A DEFECTIVE VERDICT IS PROCEDURALLY BARRED FROM FEDERAL HABEAS CORPUS REVIEW*

A state prisoner seeking federal habeas review of his conviction must first exhaust available state remedies. *Daye v. Attorney General of New York*, 696 F.2d 186, 190 (2d Cir.1982) (en banc). "Exhaustion of available state remedies requires presentation of the claim[s] to the highest state court from which a decision can be had." *Id.* at 190 n. 3. Petitioner contends that he was placed in double jeopardy because the trial court resubmitted a verdict to the jury. What in fact happened was that, as the jury began to render its verdict, the trial court found that the form of the verdict was not in accordance with its instructions and, as required by New York Criminal Procedure Law § 310.50(2), sent the jury back to continue its deliberations and reconsider its verdict.[1] Shortly

---

1. New York Criminal Procedure Law § 310.50(2) states: "If the jury renders a verdict which in form is not in accordance with the court's instructions or which is otherwise

legally defective, the court must explain the defect or error and must direct the jury to reconsider such verdict, to resume its deliber-

thereafter, the jury conformed its verdict in accordance with the court's instructions, found petitioner guilty on all counts and rejected the affirmative defense of extreme emotional disturbance.

 Petitioner claimed in the Appellate Division, as he does in the instant proceeding, that the trial court's action violated his rights under the Double Jeopardy Clause and violated his rights to due process and a fair trial. This claim is not properly presented for review, however, because petitioner failed to exhaust his state remedies by presenting his claim to the highest state court empowered to hear it, the New York Court of Appeals. Although petitioner raised the resubmission claim before the Appellate Division, he failed to raise it in his application for leave to appeal to the New York Court of Appeals, where he raised only the denial of continuance claim.

Nor did petitioner's passing reference to his Appellate Division brief in his leave letter to the New York Court of Appeals serve to exhaust claims raised in the Appellate Division but not addressed in petitioner's letter to the Court of Appeals. The one-sentence paragraph near the end of petitioner's leave to appeal letter did not fairly present any additional claims to the New York Court of Appeals. Rather, it appears merely to direct the Court of Appeals to petitioner's Appellate Division brief for further facts and arguments concerning the denial of continuance claim. Because petitioner's reference to his Appellate Division brief was so vague as to leave the Court of Appeals guessing as to which issues petitioner was seeking to have reviewed, the resubmission claim was not fairly presented. *See Matias v. Hoke,* 703 F.Supp. 324, 325 (S.D.N.Y.1989) (where claims are not addressed in leave letter, sending copy of Appellate Division brief to Court of Appeals does not "fairly present" claims to highest court).

However, rather than dismiss this claim on exhaustion grounds and send petitioner back to state court where further attempts to obtain review of his claim on the merits would be futile, this Court deems the claim exhausted but finds it procedurally barred. *See Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991). The same procedural bar present in *Grey* is present here. Petitioner may not seek leave in the Court of Appeals again as he is only permitted one such request. New York Rules of Court § 500.10[a]; *People v. Spence,* 82 N.Y.2d 671, 601 N.Y.S.2d 566, 566, 619 N.E.2d 644 (N.Y.1993); *People v. Hernandez,* 680 N.Y.S.2d 74, 74 (1st Dep't 1998). Under these circumstances, petitioner may not litigate the merits of his claim in a federal habeas corpus proceeding, absent a showing of cause for the procedural default and prejudice resulting therefrom. *Grey,* 933 F.2d at 121. Here, no such showing has been made.

 Appellate counsel's decision not to raise the resubmission claim in the New York Court of Appeals does not constitute cause for his procedural default. The existence of cause for a petitioner's procedural default ordinarily turns on whether petitioner can show that some objective factor external to the defense impeded counsel's efforts to comply with a state's procedural rules. Attorney error short of ineffective assistance of counsel does not constitute cause and will not excuse a procedural default. *See Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Murray v. Carrier,* 477 U.S. 478, 486–88, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Moreover, the decision of appellate counsel to raise a claim on appeal that may reasonably be considered stronger than those asserted by the petitioner in a habeas petition is usually a well-reasoned tactical decision, does not constitute ineffective assistance of counsel and does not constitute cause sufficient to excuse a procedural default. *See generally Jones v.*

ation for such purpose, and to render a proper verdict."

*Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Cantone v. Superintendent, N.Y. Correctional Facility at Green Haven,* 759 F.2d 207, 218–19 (2d Cir.1985).

In this case, counsel's decision not to raise in the Court of Appeals a claim concerning the resubmission of the case to the jury was well justified. In *People v. Salemmo,* 38 N.Y.2d 357, 379 N.Y.S.2d 809, 813, 342 N.E.2d 579 (1976), the New York Court of Appeals rejected a claim virtually identical to the one raised here. Thus, it was highly improbable that the Court of Appeals would have granted leave to appeal on that issue. By focusing on petitioner's claim concerning the denial of his request for a continuance and ignoring petitioners's other claim, counsel increased the likelihood that leave to appeal would be granted. Moreover, because the Court of Appeals had previously rejected a claim virtually identical to petitioner's, petitioner cannot demonstrate any prejudice from counsel's failure to raise the claim in his letter seeking leave to appeal to the New York Court of Appeals. Accordingly, there is no basis upon which to excuse petitioner's procedural default.

### CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. The Clerk of the Court is directed to close the case.

SO ORDERED.