Joseph BRUNSON, pro se, Petitioner,

v.

Frank TRACY, Superintendent, Downstate Correctional Facility, Respondent.

No. 03–CV–1895 (DLI)(ASC).

United States District Court, E.D. New York.

March 2, 2005.

Joseph Brunson, Fishkill, NY, pro se.

New York State Attorney Generals Office–Generic, John M. Castellano, Queens County DA's Office, Kew Gardens, NY, for Respondent.

### *OPINION AND ORDER*

IRIZARRY, District Judge.

Petitioner Joseph Brunson seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. For the reasons discussed below, the petition is denied.

*Background*

Petitioner was arrested, charged and tried in New York State Supreme Court with acting in concert in committing the crimes of Attempted Robbery in the First and Second Degrees, Assault in the Second Degree, Criminal Possession of a Weapon in the Third Degree, Criminal Possession of a Weapon in the Fourth Degree, and Unlawful Possession of Marijuana under the New York State Penal Law. Petitioner's friend, Luis Rodriguez, also was arrested and charged with Attempted Robbery in the First and Second Degrees, Criminal Possession of a Weapon in the Fourth Degree, two counts of Assault in the Second Degree, and Menacing in the Second Degree. Rodriguez pled guilty to Criminal Possession of a Weapon

in the Fourth Degree and was sentenced to three years' probation.

The prosecution adduced the following evidence at trial: On August 22, 1998, Norman Kennerly and his brother, Kelvin, were attacked by petitioner and Rodriguez, who tried unsuccessfully to steal a gold chain from Norman Kennerly's neck. In the process, petitioner slashed Kennerly's face with a boxcutter. The Kennerly brothers immediately flagged down Officer Robert Glenn's police patrol car. A few blocks from the site of the incident, Officer Glenn and his partner seized petitioner and Rodriguez who not only matched the description given by the Kennerlys but were also identified by Norman Kennerly as his attacker. Officer Glenn recovered several boxcutters from garbage cans near where petitioner and Rodriguez were apprehended. The Officer also recovered another boxcutter and marijuana from petitioner's pocket.

At trial, petitioner testified that the Kennerlys caused the altercation, that he never intended to steal the gold chain, and that Rodriguez—alone and without petitioner's knowledge—produced the boxcutter and slashed Norman Kennerly's face.

The jury initially acquitted petitioner of Attempted Robbery in the First and Second Degrees, Criminal Possession of a Weapon in the Third and Fourth Degrees, and Assault in the Second Degree during the commission of a felony or of immediate flight therefrom, but found him guilty of Assault in the Second Degree with a dangerous instrument and Unlawful Possession of Marijuana. After the initial verdict was read, counsel for petitioner argued that the verdict was repugnant.[1] Specifically, counsel for petitioner argued that the verdict of guilty on the charge of Assault in the Second Degree, which required the use of a "dangerous instrument," was inconsistent with the acquittals on the weapons possession charges.

At defense counsel's urging, the trial judge initially resubmitted to the jury the charge of Assault in the Second Degree with the use of a "dangerous instrument." The prosecutor argued that the judge should have resubmitted all of the inconsistent counts to the jury (i.e., Assault in the Second Degree during the commission of a felony or of immediate flight therefrom and Criminal Possession of a Weapon in the Third Degree and Fourth Degrees). The trial judge denied this application. The jury then sent two notes to the judge asking for clarification on the weapon possession charges.[2] At this time, the trial judge reconsidered his prior ruling and granted the prosecutor's application to resubmit the weapon possession charges to the jury and re-read the prior instructions on those charges.

Petitioner ultimately was convicted of Assault in the Second Degree, Criminal Possession of a Weapon in the Third Degree, and Unlawful Possession of Marijuana in violation of New York State law. On October 25, 1999, petitioner was sentenced, as a persistent felony offender, to concurrent indeterminate terms of imprisonment of from twelve years to life, three and one-

1. Under New York law, a repugnant verdict is one that is "inherently self-contradictory." *People v. Trappier,* 87 N.Y.2d 55, 637 N.Y.S.2d 352, 660 N.E.2d 1131, (1995) (internal citations omitted). In other words, a New York court may set aside a verdict as repugnant "where the defendant is convicted on an offense containing an essential element that the jury has found the defendant did not commit." *Id.* (internal citation omitted).

2. The first note asked the Court to "clarify count six [third degree weapons possession] and please explain intent in plain language." The second note asked the Court to "clarify the difference between count three [fourth degree weapons possession] and count six."

half to seven years, and a definite term of 15 days for these crimes, respectively. Petitioner remains incarcerated pursuant to this sentence.

Through counsel, petitioner appealed his conviction to the New York State Appellate Division, Second Department, citing prosecutorial misconduct based on both the prosecutor's failure to abide by over forty court rulings on defense counsel's objections during petitioner's cross-examination and the prosecutor's inflammatory remarks during summation. On June 11, 2001, the Appellate Division unanimously rejected these arguments and affirmed petitioner's conviction, ruling that the prosecutor's remarks during summation were either fair comment on the evidence or fair response to defense counsel's summation. *People v. Brunson*, 284 A.D.2d 406, 726 N.Y.S.2d 281 (2d Dep't 2001). As to the prosecutor's alleged disregard of the court's rulings during petitioner's cross-examination, the Appellate Division found that argument "unpreserved for appellate review [citations omitted] and, in any event, without merit. : . ." *Id.* (citing *People v. Overlee*, 236 A.D.2d 133, 666 N.Y.S.2d 572 (1st Dep't 1997)). On July 19, 2001, the New York State Court of Appeals denied petitioner's request for leave to appeal the Appellate Division's ruling. *People v. Brunson*, 96 N.Y.2d 899, 730 N.Y.S.2d 796, 756 N.E.2d 84 (2001).

On November 29, 2001, petitioner moved the trial court to vacate his conviction, arguing that: (1) the prosecutor knowingly and willfully used false evidence to obtain the conviction; (2) Officer Glenn misrepresented the facts of the case; and (3) petitioner's sentence as a persistent felony offender violated his due process rights under the New York Constitution and the Sixth Amendment to the U.S. Constitution. The trial court denied that motion on January 18, 2002 as procedurally barred because petitioner failed to raise these issues on direct appeal despite their being readily ascertainable from the trial record.

On August 21, 2002, petitioner filed an application for a writ of error *coram nobis* before the Appellate Division. Petitioner argued that the trial court committed reversible error by: (1) not charging the jury with the lesser included offense of Assault in the Third Degree; and (2) determining that the jury had rendered a repugnant verdict and giving confusing and misleading corrective instructions. Petitioner further argued that his appellate counsel was ineffective based on appellate counsel's failure to raise these issues on appeal. Stating only that "[t]he appellant has failed to establish that he was denied effective assistance of appellate counsel," the Appellate Division denied the application for writ of error *coram nobis* on December 16, 2002. *People v. Brunson*, 300 A.D.2d 501, 750 N.Y.S.2d 880 (2d Dep't 2002) (citing *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). On March 28, 2003, the New York State Court of Appeals denied petitioner's application for leave to appeal the Appellate Division's ruling. *People v. Brunson*, 99 N.Y.2d 626, 760 N.Y.S.2d 107, 790 N.E.2d 281 (2003).

*Discussion*

Petitioner filed the instant application seeking a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on April 14, 2003. As a *pro se* litigant, petitioner's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). According the petition a liberal construction, petitioner raises three issues in support of his application for the writ. First, petitioner claims that he was denied a fair trial under the Sixth Amendment to the U.S. Constitution due to prosecutorial misconduct.

The alleged misconduct consisted of the prosecutor's disregard of sustained objections during petitioner's cross-examination and the prosecutor's inflammatory statements during summation. Second, petitioner claims that his Sixth Amendment rights were violated when the trial judge erroneously concluded that the jury verdict was repugnant and issued confusing and misleading instructions in an effort to correct the repugnancy. Third, petitioner claims that he was denied effective assistance of appellate counsel based on his appellate counsel's failure to raise certain issues on direct appeal.

*Prosecutorial Misconduct*

■ Petitioner's claim of prosecutorial misconduct, insofar as it is based upon the prosecutor's disregard of sustained objections to her cross-examination of petitioner, is procedurally barred. The Appellate Division ruled that petitioner's claim was "unpreserved for appellate review (*see* N.Y. CRIM. PROC. LAW § 470.05(2); *People v. Medina,* 53 N.Y.2d 951, 441 N.Y.S.2d 442, 424 N.E.2d 276[ ]) and, in any event, without merit. . . ." *People v. Brunson,* 284 A.D.2d 406, 726 N.Y.S.2d 281 (2001) (citing *People v. Overlee,* 236 A.D.2d 133, 666 N.Y.S.2d 572). It is well-settled that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir. 1990).

■ As the Appellate Division found, this claim was procedurally barred when petitioner failed to object with sufficient specificity to the alleged errors in the prosecutor's cross-examination, or to demand curative instructions to the jury once the objections were sustained. In such a situation, New York's law deems "the cu-rative instructions . . . to have corrected the error to the defendant's satisfaction" *People v. Heide,* 84 N.Y.2d 943, 944, 620 N.Y.S.2d 814, 644 N.E.2d 1370 (1994) (citing *People v. Williams,* 46 N.Y.2d 1070, 1071, 416 N.Y.S.2d 792, 390 N.E.2d 299 (1979)); *see also Garcia v. Lewis,* 188 F.3d 71, 78–79 (2d Cir.1999). The decision of the state court, having rested on "independent and adequate state grounds," is necessarily beyond the reach of federal *habeas corpus* review. *Cotto v. Herbert,* 331 F.3d 217, 238 (2d Cir.2003); *Garcia,* 188 F.3d at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules.") (citations omitted).

■ This Court may reach a *habeas* petitioner's claim despite a procedural default if the petitioner can demonstrate either cause and prejudice from the default or a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In this case, petitioner has not shown cause for the procedural default. *See Bloomer v. U.S.,* 162 F.3d 187, 191 (2d Cir.1998) (requiring a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim at an earlier proceeding") (internal quotations and citations omitted). Notably, petitioner has not demonstrated, or even attempted to demonstrate, that trial counsel was ineffective by failing to object with greater specificity or press the court for further relief. *See Wood v. Artuz,* 39 F.Supp.2d 211, 216 (E.D.N.Y.1999) ("Attorney error short of ineffective assistance of counsel does not constitute cause and will not excuse a procedural default.") (citing cases).

Petitioner also cannot show that failure to consider his claims will result in a fundamental miscarriage of justice.

A *habeas* petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted.... '[A]ctual innocence' means factual innocence, not mere legal insufficiency.' To demonstrate 'actual innocence' a habeas petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'

*Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir.2002) (internal citations omitted).

■ In order for a claim of actual innocence to be credible, petitioner must "support his allegations of constitutional error with new reliable evidence ... that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Petitioner has not come forward with any new evidence even suggesting a fundamental miscarriage of justice and therefore is unable to surmount the procedural bar.

■ Petitioner next argues that the prosecutor engaged in misconduct based on her remarks during summation. 28 U.S.C. § 2254(d) provides that a writ of *habeas corpus*

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.

The first step is to determine if petitioner's claim of prosecutorial misconduct was "adjudicated on the merits in State court proceedings." "[A] state court adjudicates a state prisoner's federal claim on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001).

"We determine whether a state court's disposition of a petitioner's claim is on the merits by considering: (1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits."

*Id.* at 314 (quoting *Mercadel v. Cain,* 179 F.3d 271, 274 (5th Cir.1999)).

■ The issue of prosecutorial misconduct based on the allegedly inflammatory summation was raised by petitioner and fully briefed on appeal. The prosecution responded substantively, and did not argue that the issue was unpreserved for appellate review. The Appellate Division ruled that "the challenged statements were either fair comment on the evidence adduced at trial or fair responses to the defense counsel's summation." *People v. Brunson,* 284 A.D.2d 406, 726 N.Y.S.2d 281 (2d Dep't.2001) (internal citations omitted). Based on these facts, it is clear that the opinion of the Appellate Division was an adjudication "on the merits" as that term is used in 28 U.S.C. § 2254(d). This court therefore turns to the question of whether the Appellate Division's ruling was "contrary to," or an "unreasonable application of," federal law.

The appropriate standard of review for a *habeas corpus* petition alleging prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir.1990) (citing *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)). Only comments by a prosecutor that constitute "egregious misconduct" will support a finding of a denial of due process. *Duran v. Miller*, 322 F.Supp.2d 251, 259 (E.D.N.Y.2004) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The petitioner must show that the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 647, 94 S.Ct. 1868. In order to meet this standard, petitioner may not rely on a " 'reasonable possibility' that trial error contributed to the verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir.1994), (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). Rather, petitioner must show that the prosecutor's comments caused him "actual prejudice." *Id.*

The court must look at the totality of the circumstances in deciding whether the egregiousness of the prosecutor's comments justifies relief. *United States v. Young*, 470 U.S. 1, 11—12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (noting the importance of context, including defense counsel's conduct); *Duran*, 322 F.Supp.2d at 259. In the Second Circuit, this inquiry includes three factors: (1) the severity of the prosecutor's misconduct, (2) any curative measures taken by the court, and (3) the certainty of the conviction without the prosecutor's comments. *See, e.g., U.S. v. Melendez*, 57 F.3d 238, 241 (2d Cir.1995); *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir.1994); *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir.1990). Standing alone, inappropriate prosecutorial comments are insufficient to overturn a conviction. *Duran*, 322 F.Supp.2d at 259 (citing *Young*, 470 U.S. at 11, 105 S.Ct. 1038).

Petitioner's allegations of prosecutorial misconduct during summation focus on the prosecutor's attempt to rehabilitate the credibility of the victim, Norman Kennerly, and Police Officer Robert Glenn. The prosecutor argued in his closing that, because Kennerly was on parole, Kennerly's reporting of the altercation with petitioner to the police bolstered his credibility since involving the authorities runs contrary to the expected behavior of a parolee. As to Officer Glenn, petitioner alleges that the prosecutor improperly argued during summation that Glenn's admitting to a "rookie mistake" in not properly vouchering all of the weapons recovered meant that "he [was] a credible and believable witness" because he "was willing to acknowledge his own error on the stand." The trial court sustained objections to these remarks.

Viewing the prosecutor's comments in the totality of the circumstances, nothing in the Appellate Division's decision was either contrary to, or an unreasonable application of, federal law. First, the prosecutor's remarks were responsive to defense counsel's closing argument. Petitioner's counsel devoted a large portion of his summation to attacking Kennerly and Officer Glenn's credibility. The Supreme Court has held that "if the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments [do] not warrant reversing a conviction." *Young*, 470 U.S. at 12–13, 105 S.Ct. 1038. Such is the case here.

Second, even if the comments were objectionable, this Court cannot conclude that the prosecutor's remarks "so infected

the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly,* 416 U.S. at 647, 94 S.Ct. 1868, or that the Appellate Division unreasonably applied or acted contrary to federal law in so concluding. Comparatively speaking, the severity of the prosecutor's misconduct, if indeed it was misconduct, was minimal. *Compare Melendez,* 57 F.3d at 242 (concluding that the prosecutor's statement that the judge "knows [the government's witness] is telling the truth" was "highly improper"). In addition, the specific testimony of the victim and arresting officer was sufficiently compelling to justify the jury's verdict notwithstanding the prosecutor's allegedly improper remarks. Finally, the jury's acquittal of petitioner on the most serious charges of Attempted Robbery in the First and Second Degrees also supports the conclusion that the jury was not influenced by any of the prosecutor's allegedly improper remarks. *See Young,* 470 U.S. at 17 n. 15, 105 S.Ct. 1038 (noting that the jury's acquittal of the defendant on the most serious charge "reinforces [the] conclusion that the prosecutor's remarks did not undermine the jury's ability to view the evidence independently and fairly.")

*Sixth Amendment "Fair Trial" Claim*

Petitioner contends he was denied his Sixth Amendment right to a fair trial based on the trial court's determination that the jury rendered a repugnant verdict and its attempts to correct that verdict. Petitioner argues that the jury's verdict was not repugnant, and that the court's attempts to correct the verdict lead to confusion among the jurors.

■ Petitioner's claims fail because they were never presented to the state courts on direct appeal. *See* 28 U.S.C. § 2254(b) ("An application for a writ of *habeas corpus* ... shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State."); *Morgan v. Jackson,* 869 F.2d 682, 684 (2d Cir.1989) ("[P]rior to seeking federal relief for his state court conviction, the petitioner must have given the state courts a fair opportunity to pass upon his federal claim.") In order to properly preserve this issue for review, petitioner must have fairly presented the issue to the highest state court empowered to hear it. *Daye v. Attorney General of New York,* 696 F.2d 186, 190 (2d Cir.1982) (en banc). Under New York law, only a reviewing court on *direct appeal* is empowered to review issues contained within the trial record. *People v. Harris,* 109 A.D.2d 351, 353, 491 N.Y.S.2d 678 (2d Dep't.1985) (noting that N.Y. CRIM. PROC. LAW § 440, which codified the common-law writ of error *coram nobis,* is "designed to inform a court of facts not reflected in the record and not known at the time of judgment ... [ and] cannot be used as a vehicle for a second appeal or as a substitute for direct appeal ....") (citations omitted). Petitioner's claims regarding the repugnancy of the jury's verdict and the Court's corrective instructions are clearly contained within the trial record. Petitioner's failure to present these issues on direct appeal precludes their review here. The fact that these issues were presented in petitioner's *coram nobis* petition is irrelevant, since they were no more cognizable by the *coram nobis* court then they are here. *Id.*

■ Because petitioner has not presented his claims regarding the repugnancy of the jury verdict and the supplemental jury instructions to the highest state court empowered to hear them, these claims ordinarily would be deemed unexhausted. However, in this case, despite petitioner's failure to raise these issues before the state courts, his petition should nevertheless be deemed exhausted because those

claims are now procedurally barred from presentation to the state courts. *See Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991). The Court therefore finds Petitioner's claims exhausted, but procedurally barred.

As previously noted, procedurally barred claims are beyond the scope of federal *habeas* review unless the petitioner can demonstrate either cause and prejudice or a fundamental miscarriage of justice. With the exception of his claim of ineffective assistance of counsel (see *infra* ) petitioner has not demonstrated cause for the procedural default, and this Court can find none. Additionally, petitioner cannot demonstrate a fundamental miscarriage of justice.

The Court notes that petitioner argued at trial that the verdict was repugnant.[3] Petitioner now argues that the verdict was not repugnant and that the trial court erred in so finding. Petitioner further contends he was denied effective assistance of appellate counsel because of appellate counsel's failure to argue against the verdict's repugnancy, a position contrary to petitioner's position at trial.

■■■■ It is well-settled that federal *habeas* relief is unavailable for inconsistent verdicts. *U.S. v. Romano,* 879 F.2d 1056, 1060 (2d Cir.1989) (citing *U.S. v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984)). Because this Court is without power to set aside a state court conviction on the basis of repugnancy, *id.,* it follows logically that this Court is similarly powerless to set aside a state court's erroneous determination that the jury's verdict was in fact repugnant. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")

Petitioner's allegation that the trial court's supplemental instructions to the jury "confused and mislead the jury as to the elements of the crime" is similarly flawed. In considering this allegation, the Court notes first that petitioner does not allege that the jury charges were legally incorrect or a misstatement of the law. "A trial judge has broad discretion in determining how, and under what circumstances, a charge will be given." *Grey v. Henderson,* 788 F.Supp. 683, 694 (E.D.N.Y.1991). The trial court responded to the jury's questions by re-reading the elements of the charges. This response has been held constitutionally sound. *Id.* (upholding, under federal *habeas* review, the trial judge's repetition of the same language used in the initial charge when asked by the jury for further instructions). Moreover, contrary to petitioner's claim that the jury was confused further, the fact that the jury returned with a verdict that was not repugnant strongly suggests that the supplemental instructions served well their intended function. *See Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (juries presumed to follow the court's instructions).

■■■■ Petitioner further alleges that the re-submission of these charges to the jury violated his Fifth Amendment rights. Presumably, petitioner refers to a potential double-jeopardy violation. As the court found in *People v. Salemmo,* "double jeopardy does not attach where the same jury reconsiders its defective or inconsistent verdict." 38 N.Y.2d 357, 379 N.Y.S.2d 809, 813, 342 N.E.2d 579 (1976). To the extent petitioner alleges a double-jeopardy violation based on the trial court's re-sub-

---

**3.** Petitioner has never alleged that trial counsel erred by arguing in favor of the verdict's repugnancy.

mission to the jury of the counts contained in the indictment, such claim is without merit.

*Ineffective Assistance of Counsel*

Petitioner claims that he was denied his Sixth Amendment right to effective assistance of counsel on appeal because his appellate counsel did not raise the trial court's failure to charge the jury with the lesser included offense of Assault in the Third Degree and the Sixth Amendment issues concerning the repugnant verdict and, instead, raised the unpreserved issue of prosecutorial misconduct.

As noted above, the first step is for this Court to determine if petitioner's claim of ineffective assistance of counsel was "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Petitioner concedes that this issue was raised before the Appellate Division in his petition for Writ of Error *Coram Nobis*. *(Pet.* at 20). In response, the Appellate Division issued a one sentence opinion ruling that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Brunson,* 300 A.D.2d 501, 750 N.Y.S.2d 880 (2d. Dep't.2002). The Appellate Division cited *Jones v. Barnes,* a case in which the U.S. Supreme Court held that appellate counsel is not required to raise every nonfrivolous issue requested by defendant. *Id.* (citing *Jones,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)).

In order to adjudicate a claim on the merits, the Appellate Division "need not mention the argument raised or cite relevant case law or even explain its reasoning process." *Eze v. Senkowski,* 321 F.3d 110, 121 (2003) (internal quotation marks and citations omitted). For example, in *Eze,* the Second Circuit found the Appellate Division's holding that "the record does not support the contentions of the defendant that he was denied effective assistance of counsel" to be an adjudication on the merits sufficient to trigger § 2254(d)(1)'s deferential standard of review. *Id.* at 122; *see also Jenkins v. Artuz,* 294 F.3d 284, 291 (2002) (concluding that the words "without merit" constituted an adjudication on the merits); *Sellan,* 261 F.3d at 314 (concluding that the statement that the "ineffective assistance of counsel claim was denied" constituted an adjudication on the merits). The Appellate Division's citation to *Jones v. Barnes,* a relevant, if not controlling, case, further supports the conclusion that petitioner's claim was decided on the merits. *See Larrea v. Bennett,* 368 F.3d 179, 183 (2d Cir.2004) (Appellate Division's citation to a case in which ineffective assistance claim was rejected on the merits indicated that petitioner's claim was also rejected on the merits). In light of these precedents, it is clear that the Appellate Division's statement that petitioner "failed to establish that he was denied the effective assistance of appellate counsel" constitutes an adjudication "on the merits." Furthermore, this adjudication has plainly been reduced to a judgment.

"[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's decision was an 'unreasonable application' of clearly established Supreme Court precedent." *Sellan,* 261 F.3d at 311–12. The applicable Supreme Court precedent here is *Strickland v. Washington,* 466 U.S. 668, 690–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which sets forth the standard for ineffective assistance of counsel.

To prevail under *Strickland,* a defendant must show that counsel's representation 'fell below an objective standard of rea-

sonableness' based on 'prevailing professional norms' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' The *Strickland* Court defined a 'reasonable probability' as 'a probability sufficient to undermine confidence in the outcome.'

*Eze,* 321 F.3d at 123 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). This standard applies to both trial and appellate counsel. *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). The only question for this Court is whether the Appellate Division unreasonably applied the *Strickland* standard in determining that petitioner was not denied effective assistance of appellate counsel based on appellate counsel's failure to raise the trial court's decision not to charge the jury with the lesser included offense of assault in the third degree[4] and the trial court's finding of repugnancy and corrective jury instructions.

"Strategic choices," such as deciding which issues to raise on appeal, "made after thorough investigation of the law and facts ... are virtually unchallengeable." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. "[T]he decision of appellate counsel to raise a claim on appeal that may reasonably be considered stronger than those asserted by the petitioner in a habeas petition is usually a well-reasoned tactical decision[ and] does not constitute ineffective assistance of counsel." *Wood,* 39 F.Supp.2d at 216 (citing cases).

An examination of the circumstances attendant to appellate counsel's decision reveals its prudence. Under New York law, upon a party's request, the trial court may submit the lesser included offense of as-

sault in the third degree only if a "reasonable view of the evidence" would support a finding that petitioner committed the lesser offense, but not the greater. N.Y. CRIM. PROC. LAW § 300.50. Thus, in deciding to raise this issue before the Appellate Division, appellate counsel first would have to decide if a reasonable view of the evidence would support a finding that petitioner committed Assault in the Third Degree but not Assault in the Second Degree.

In New York, "a person is guilty of assault in the second degree when: ... with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument...." N.Y. PENAL LAW § 120.05(2). "A person is guilty of assault in the third degree when: ... with intent to cause physical injury to another person, he causes such injury to such person or to a third person...." N.Y. PENAL LAW § 120.00(1). Thus, for purposes of this case, the difference between assault in the second degree and assault in the third degree is the use of a "deadly weapon or dangerous instrument."

Petitioner's theory at trial was that his friend, Rodriguez, produced the boxcutter without petitioner's knowledge and slashed Norman Kennerly's face after Norman and Kelvin Kennerly attacked petitioner. Thus, petitioner's trial strategy was to concede that Norman Kennerly's face was in fact slashed with a boxcutter, but that Rodriguez alone, and not petitioner, did so in defense of petitioner and without petitioner's knowledge. This strategy effectively precluded a charge of assault in the third degree because petitioner was also charged with "acting in concert" as defined

---

4. Trial counsel requested that the court submit to the jury the lesser included offense of Assault in the Third Degree. Accordingly, this issue was appropriately preserved for appellate review.

by N.Y. PENAL LAW § 20.00.[5] If the jury credited petitioner's testimony that he did not use the boxcutter and had no knowledge of it, the "acting in concert" charge nevertheless imputes to petitioner Rodriguez's use of the boxcutter so long as petitioner intended to assault Kennerly together with Rodriguez. *People v. Gage,* 259 A.D.2d 837, 687 N.Y.S.2d 202, 204 (3d Dep't.1999) ("[S]trict liability for an aggravating circumstance attaches to an accomplice, regardless of the latter's degree of intent, knowledge or conduct with respect to the aggravating circumstance . . . .") (internal citations omitted). Therefore, the jury's only options were to conclude either that: (1) petitioner did not intend to assault Kennerly—a finding the jury obviously rejected; or (2) petitioner did intend to assault Kennerly and that either petitioner or Rodriguez used the boxcutter. Since liability for use of the boxcutter is strict with respect to those "acting in concert," it makes no difference whether the jury concluded that Rodriguez or petitioner used the boxcutter, so long as the requisite level of intent for the underlying assault was met. In short, the jury could have either convicted petitioner of assault in the second degree or acquitted him entirely. The jury chose the former.

In light of the foregoing, there was no way for the jury to "reject a portion of the prosecution's case which is indispensable to establishment of the higher crime and yet accept so much of the proof as would establish the lesser crime." *People v. Scarborough,* 49 N.Y.2d 364, 369–70, 426 N.Y.S.2d 224, 402 N.E.2d 1127 (1980). As a result, there is no reasonable view of the evidence that would have supported the conclusion that petitioner intended to· assault Norman Kennerly without a "deadly weapon or dangerous instrument," given the undisputed fact that Norman Kennerly's face was slashed by somebody during the incident.[6] Since the trial court committed no error, appellate counsel's decision not to argue that the trial court should have charged the jury on the lesser included offense of Assault in the Third Degree cannot have fallen " 'below an objective standard of reasonableness' based on 'prevailing professional norms.' " *Eze,* 321 F.3d at 123 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

■ Petitioner's final argument is that appellate counsel erred in failing to challenge the trial court's determination that the verdict was repugnant and the trial court's supplemental jury instructions designed to cure the repugnancy. The most obvious answer to the question of why appellate counsel declined to press this argument is that it would have been deemed waived by the Appellate Division when petitioner argued in favor of the verdict's repugnancy at trial. Appellate counsel's decision was therefore not simply not ineffective, but prudent, as the raising of this frivolous argument may well have distracted from other, more meritorious issues urged by appellate counsel. *See Jones,* 463 U.S. at· 752, 103 S.Ct. 3308 (*quoting* Jackson, *Advocacy Before the Supreme Court,* 25 TEMPLE L.Q. 115, 119 (1951)) (" 'One of the first tests of a dis-

---

5. N.Y. PENAL LAW § 20.00 provides: "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct."

6. Petitioner testified that, during the fight, he saw neither the boxcutter nor the slashing. As a result, petitioner's trial counsel realistically could not have argued that one of the Kennerlys produced the boxcutter and was somehow injured with his own weapon. Norman Kennerly testified that both petitioner and Rodriguez cut him with boxcutters.

criminating advocate is to select the question, or questions, that he will present orally. Legal contentions, like the currency, depreciate through over-issue....' ").  Accordingly, the petition is denied on this ground as well.

*Conclusion*

For the foregoing reasons, the petition for a writ of *habeas corpus* is denied. The Clerk of the Court is directed to serve a copy of this Order by forwarding a copy hereof to all parties. The Clerk of the Court is further directed to enter judgment accordingly and to close this case.

SO ORDERED.